The next case today is Jorge Quintanilla v. Raymond Marchilli, appeal number 20-1496. Attorney Masfer, please introduce yourself for the record and proceed with your argument. Good morning, and may it please the court. Eduardo Masfer for the petitioner, Jorge Quintanilla. And if I may, I'd like to reserve one minute for rebuttal. Yes. The U.S. Supreme Court has stated in Harrington and Wiggins that while the court cannot insist that defense counsel confirm every aspect of a strategic basis for their actions, they cannot indulge in post hoc rationalizations for counsel's decision making that contradict the available evidence of counsel's actions. That is what the Massachusetts Appeals Court did here. At no point, and I would invite the court to review the trial transcript, at no point did trial counsel ever state his strategy. He either agreed with the court, with the trial judge stating that whatever he was doing was his trial strategy, or agreed whatever she proposed was a trial strategy was what he was doing. But the strategy that's attributed to him by the trial judge and by the Massachusetts Court of Appeals is one created by that post hoc rationalization that's not approved by under federal law. It plainly was contradicted by counsel's actions and his statements, and the defendant was prejudiced by an unfair trial that stacked inadmissible and devastatingly prejudicial evidence against him and has resulted in a life sentence. The first major issue is that trial counsel conducted absolutely no investigation. There were multiple witnesses, 11 who came who testified at the motion for new trial, that paint a compelling picture of how the defendant resided with the alleged victim in a house, one that was filled with his family members and visited by hers. The basic part of those witnesses' testimony is that they contradicted the most basic points of her accusation, that she was sold to the defendant, that she was treated like a slave, that she was raped, and that she was beaten. Their testimony was not mere impeachment as categorized, nor was it cumulative of her testimony. Rather, it flipped the entire presentation of testimony at trial. Counsel, the state trial judge found that in fact many of these witnesses would confirm the victim's testimony, that many of their statements were duplicative of things that were already in the record, and that as to a few of them, the statements slightly contradicted other evidence in the record. The state appeals court accepted those characterizations as the basis for its decision. It avoided any discussion of the credibility of those. They disagreed with you as to impeachment. We do not get to review this de novo. We have to ask whether it was an unreasonable application of law or fact, meaning really no court could have so concluded. So what is unreasonable about their view of it, even if your view is different? It's unreasonable because they misapplied federal law. The child judge or the judge who did the motion to suppress found individuals were not credible. They did not rely on that fact. If we have to get into that issue, I'm prepared to, but the MAC carefully did not rely on those lack of credibility findings. The issue that it did rely upon mischaracterized the findings that the judge made. It wasn't confirming multiple things that she had said. It impeached her in some ways and presented a different view of her life. The appeals court decision stated that it was cumulative because the alleged victim stated that she was allowed to leave the house on occasion and had visited friends on occasion. The testimony that came out at the motion for new trial was far more expansive than that. It indicated that she lived a fairly normal life, happy life, that they did not see bruises, that they did not see cut hair. They did contradict the trial testimony, but that's why they were so useful. It wasn't simply an impeachment as it is presenting an entirely different factual scenario for the jurors. Let me see if I understand. You're saying that the state appeals court mischaracterized the factual findings made by the new trial judge who heard these witnesses. That is correct. The new trial judge found them not credible, and then the court of appeals mischaracterized those findings by stating that it was only mere impeachment or cumulative. It ignored or did not address several of the crucial issues that were raised by those witnesses, predominantly that it provided motive to lie. One of the witnesses indicated that the complaining witness had said that she was going to falsely accuse the defendant in order to get paperwork. The witnesses that were her own, and by her own I mean the victim's own family members, contradicted why she came to live with the defendant, how her life was with the defendant, and observed her in manners and means that were not consistent with what she testified at trial. All of that evidence would have provided reasonable doubt at the very least or presented a different picture of this case to the jurors and would have led to a different verdict. Could you just refresh my memory of the separate accounts on which there were convictions? Because it may be that some of what you're talking about might be relevant to some of the accounts more than others, given the age of the person we're talking about who is 13. I don't think there's a dispute about that. There is a dispute about that. What is the dispute on that point? The dispute on that point is that there was pharmaceutical records that indicated that she wasn't... I meant with respect to witness testimony. Put aside the pharmaceutical records point for one second. Assume that that's not a ground for error. I understand you make an argument that it is, but if we disagreed with you on that and we were left to just the questions so far we've been discussing... All of the witnesses testified that she was over the age of consent. What? I apologize, Your Honor. All of the witnesses testified in the motion for new trial that she was over the age of consent. We have a connection problem, Judge Barron. Is that on my end? I think so, but you sound fine now. Okay, I'll turn off the video for a second. Sometimes that helps. Okay, how's that? Better? Yes. Okay, I apologize you can't see me, but you have already seen me. So, if you could just repeat what you said. I apologize, I didn't get it. Yes, Your Honor. All of the witnesses who testified at the motion for new trial indicated that they all believed that she was over the age of consent. So, all of their testimony went directly to the primary charges that resulted in the defendant's life sentence. But maybe I'm still... None of them disputed her actual age, though. Judge, I believe that they did. They indicated that she was over the age of 16 when they met her or knew her or while she resided with the defendant. None of them testified that she was 13 or 14 during the time period where the criminal conduct was alleged to have occurred. Well, just to nail down this point, there's a difference between their understanding of her age and any evidence about their having reason to actually know her age. Judge, that may be the case, but that was a primary issue for the trial, in fact. There was no evidence presented at the trial, with the exception of her testimony, as to her age. I see. And then the question is whether she's lying about her age. It is. And then, of course, so you had multiple witnesses who would have presented direct evidence as to that. So, your contention is that the evidence here, properly understood, was relevant to every count, undermined every count? Yes, Your Honor. And in terms of how the testimony was presented, it showed a completely different version of her life. One that would have casted significant doubt on any one specific accusation and a variety of accusations. The way the evidence came in made it sound like this sort of horrific individual who was a slave in this house being repeatedly assaulted and beaten. Can I ask one? I'm just on the age point. Was there other testimony at trial in support of the idea that she was over 13? There was no testimony at trial. And so the only evidence about her age came from the complaining witness. No witness testified at trial that she was over the age of 18. The only witnesses who were called were by the Commonwealth. With no effort to challenge her claim about her age? Beyond argument at closing, no effort. The defense put on no witnesses at all. The prosecution put on other witnesses. They were not cross-examined, were they, about this question of belief about age? No, Your Honor. There was no questions posed to the police officer who initially investigated the case or the other civilian witness that functioned as a first complaint witness as to her age. I had understood that your primary argument about age was the pharmaceutical records and your assumption that the state new trial judge got it wrong when he said, it's clear to me that counsel didn't have those records and the assumption that he had the records is incorrect and he made that factual finding. He did make that factual finding, Judge. And again, I would invite the court to look at the trial transcript because the full statement by the attorney, by the defense attorney at the time was, quote, in this case, Your Honor, to my knowledge, there has been no discovery provided whatsoever, whatsoever that would objectively and independently verify the complainant's age. There is nothing. The only documents I have, for example, was a medical form where someone handwrites a date of birth. Our argument to the trial judge was that was clearly referenced to the discovery that was provided to him by the Commonwealth. The medical record was the same medical records that were provided to him by the Commonwealth. He made no statement about whether or not he was provided any documentation by the defendant or the defendant's family. So the reliance of the trial judge on that quote from the trial is misplaced. It does not support the proposition that he stated that he didn't have any evidence from the defendant. But the trial judge, as I read it, said if he'd had, in fact, the pharmacy records in hand, which actually he might have been given by his client and the client's family, he would have used them. And he didn't because he didn't actually have them. This was a line of attack suggested to him by the defendant and the family. And how can we say that's an unreasonable conclusion by the new trial judge and then the MAC in accepting that? Because trial counsel was utterly incompetent. Multiple judges have reviewed his work. And I know we fight often about prejudice, but there's generally no fight about his incompetence. I'm sorry. The whole case is about prejudice, right? Your whole habeas petition is about the MAC conclusion that he did not show the required prejudice under Strickland. Yes, Your Honor. But Your Honor asked, why can't we defer to the fact that he made a reasonable trial strategy by not introducing medical records? And the answer is he doesn't get the benefit of that because everything else he did during the trial was... I'm sorry. The new trial judge herself criticized counsel's performance but still made this finding. Yes, and it was an error for her to make that. Can we go back to the listing of prejudice? You say age was one thing. Proving she wasn't held captive in the house was another. Although when she is taken to the police, she has obviously been beaten up. She's been assaulted. Is there any witness that she was kept... I'm sorry, that she was not for the last four years in your client's house with his family and they benefited by holding her captive? Yes, Your Honor. The witnesses who testified at the motion for new trial indicated that she came and went. She was paid for being a babysitter when she was there. Yes, and the state trial judge acknowledged that but nonetheless found that she had admitted in her own testimony that she was paid less than the going rate for babysitting and that she was permitted to go to the park and that she was sent out on errands. All of that was in the record. The trial judge requested that everyone who testified state their legal status in the United States. The trial judge took into account that she was being paid less than the going rate as Your Honor states, but so were the people who were living in the house. The individuals there make either minimum wage or less than minimum wage, so no, they can't pay full price for daycare services. The individual was not beaten when she showed up to the police. She had one bruise on her leg. On the cumulative point, which I think is what you're trying to get us to say, the characterization of it as being cumulative or just impeachment doesn't capture reasonably the nature of the testimony of the new witnesses. It does not, Your Honor. One feature of it that you've said is that given that there was no countervailing testimony about the witness's age at trial to the witness's own statement of age and no documentary evidence of her age that would have put it beyond dispute what her age was, it can't be characterized as mere impeachment or cumulative evidence. To characterize all of the new witnesses as simply providing cumulative impeachment testimony if what they were going to testify to is repeatedly that she wasn't 13, she was actually over the age of consent. So I understand that argument. Could you do a similar analysis for us with respect to that new witness testimony on other features of the case that also would call into question the notion of it being mere impeachment or cumulative testimony? So if you could just address how it's not cumulative and how it's not right to just characterize it as merely impeachment evidence. So she stated that her hair had been cut with a knife. She was permitted to testify that she had been, in essence, gang raped by a group of individuals. These people would have provided firsthand eyewitness testimony that they never witnessed any of those items. They didn't witness her being bruised. They didn't witness hair being cut. They didn't view multiple people going into a particular room. Her sister, I think both of her sisters testified at the motion for new trial, indicated that she saw them, visited them at their stop, at their shop that was near the area. It would have introduced evidence that she never complained about having any specific issues with Mr. Quintanilla or that they observed any sort of demeanor or physical evidence that would have indicated that. I just have one last question, which is I would have thought that the fact that testimony is impeachment testimony can't be a per se reason to conclude it's not prejudicial. It is not. And in fact, there is case law that states that when it relies solely on her credibility, the impeachment testimony is even more important. Is the idea that the math could only be upheld as doing something reasonable if it was fair to characterize this impeachment testimony as, if not cumulative, so weak or so unlikely to change things, it would be reasonable to think that it wasn't prejudicial because it was only impeachment testimony. I take it your position is even if that were true, that's just not a reasonable characterization of this type of impeachment testimony. That is correct, Your Honor. And to go to go another step further, when when we look at the other errors that he made and then the max conclusion about those errors as being trial strategy, it doesn't make any sense. The defendant's attorney introduced evidence that the police introduced the police officer's testimony that he that the defendant had admitted he was a gang member. That wasn't relevant. That wasn't evidence. There'd be no benefit to introducing that one statement beside being incredibly prejudicial. I'm confused. I thought she, the victim, was the one who said he was a gang member. No, Your Honor. Did the police at the interview with your client? No, Your Honor. The witness who testified was the police officer. On cross-examination, defense counsel asked the officer whether or not he, the officer, believes that the defendant was a known gang member. And then introduced into evidence the police officer's report where he states that Mr. Quintanilla had admitted to him to being a gang member. None of that was relevant to the case. None of that would have been admissible. And the expert witness at the motion for new trial indicated how toxic and prejudicial that was to the jury. The defense attorney introduced that a restraining order had been granted based on her accusations. So now we're saying that the court believed her accusations. There'd be no benefit to introducing that into evidence, and it would not otherwise being permitted. And the big piece of evidence is the SANE interview. The SANE interview is not admissible into court. In his process of cross-examining the police officer, he was warned by the trial judge, if you continue in the manner that you're doing it, you're going to open the door to the SANE. And he said yes. Then when the SANE is introduced, he doesn't object. And then when it's going to be played, he now says for the first time, oh, I didn't know we were going to play the SANE in front of the jury. I know that the government in this case says that there was some benefit to the defense for playing the SANE, but there is absolutely no benefit. At no point does the defense attorney say... make any of the sexual abuse, rape, statutory rape, aggravated rape. She came to that three or four months later. That's why, I beg your pardon, that is what the court found was his strategy. And that makes sense to me. He says, so I want the SANE interview in there. The transcript goes in. You seem to be arguing that even if the transcript goes in, that then opened it up for the government to show the video. And I understand trial counsel may have thought that the video showed her as lying on these points that he wanted to use to undercut her testimony. Judge, I believe that is incorrect. There was no trial transcript provided. He did not use any... No, no, no, the SANE transcript. It was not introduced. Okay, but the... It was not. It was the videotape. So he did not prepare a trial transcript. He did not prepare a transcript of the SANE in order to then use it to impeach. He did not use or point the jurors to any aspect of the SANE video to show that there was a contradiction. The court's point, which was the MAC's point, that, oh, he wants to show that there was a change in her testimony, was accomplished by asking the officer, she did not claim a sexual assault at your first interview. And when the officer says no to that, that completes that point. There is no benefit for introducing the SANE, and instead you get prejudicial testimony. And the MAC attributes it as a trial strategy, which is a clearly erroneous ruling, because when it's going to be played for the jury, now he's objecting to it, saying he doesn't want it to be played. Now he's a... I think the phrase he uses is he's a potted plant. And he never uses any aspect of it, not in his closing, not in an argument. Does he point the jurors to some difference or impeachment? So there was no reason to introduce this... Well, it may be offensive, but listen, we're not talking about effectiveness, we're talking about prejudice. Yes, Your Honor, but that is part of effectiveness. If you're not an effective assistant of counsel, if you're saying things that are... We're talking about prejudice. Yes, Your Honor, but he was prejudiced, the client was prejudiced by the introduction of that SANE tape, as well as a variety of other evidence. And then you have to compound that with all... I understand that you're saying that it is, on this record, the only ground for thinking it would not be prejudicial, given the nature of this evidence, is if it was being used as part of a trial strategy. It has a reasonable trial strategy, yes. And you're saying there is no way on this record to conclude that's why it got in. That is correct, Your Honor. He was making an argument that she's a liar. There is no reasonable way to read the introduction of the SANE video as part of that trial strategy. Because all the record shows is the trial strategy was just to establish that she was a liar, which she could have done without the SANE interview coming in, and then just call her a liar. And instead, for reasons that serve no function at all, he went on to actually have the video come in, which rather than bolstering the claim that she's a liar, which he could have made without the video, undermines it by also adding in all this prejudicial evidence. Is that the idea? That is the idea, Your Honor. And everything else that he does also undermines it, in terms of introducing that the court believed her to issue a restraining order, in terms of either eliciting prior bad acts or other prejudicial evidence from other witnesses, or not objecting when hearsay is coming in. So, his only trial strategy is that he was going to call her a liar. He did that, but he didn't use any evidence to accomplish that goal. He just screamed that she was a liar in an incredibly offensive way, and didn't use any of these pieces of evidence that we're seeing, or that the MAC claimed are trial strategy, in any reasonable, strategic way. You keep saying he didn't use any of that evidence. You just mean in his closing argument? In any way, Judge. For example... No, but what do you mean? That the evidence came in, he says later, he says, I was using that to show that she's a liar, but then you say, but he didn't use it. So, you must mean at closing, he didn't reference it at closing. No, Your Honor. If he wanted to use the SANE to impeach her, and this was testified to during the motion for new trial, the normal way, the logical way, is you get a transcript of the SANE, you ask the witness on the stand, did you say this or did you say that during the SANE interview? Is this the first time, or you use the SANE for some sort of impeachment value? He doesn't do that. He doesn't talk to her about the SANE. He didn't get a transcript of the SANE. He doesn't confront her about the SANE. So, there's ways of using this evidence, maybe misguided, but he doesn't do that. It's not like this was a conscious theory. It seems to be a reaction to the court telling him, if you proceed with one version of cross-examination, you're opening the door to this prejudicial evidence, and he simply says yes without thinking that through. And when he sees the repercussions of those actions, which is the SANE being played for the jury, now he objects, now he realizes his mistake. But that is not, that does severely prejudice the defendant. You just have an alleged victim who's allowed to tell her entire version again, unattacked, unimpeached, for the entire jury to see, and then they could keep playing it if they wanted to during deliberation. Maybe this would help me understand this piece of it. Some of the way you're describing it sounds to me like you're making a kind of subjective claim about what constitutes trial strategy, so that he actually had to have embraced it. One way of understanding some of the questions that are being put to you as to whether that's the right way to think about it, and whether instead we're supposed to look at it objectively, given that it's in there and what happened, does it matter what his state of mind was with respect to calling her a liar once that's in? I don't know how to think about that. Or saying that objectively, there's just no way anybody pursuing that trial strategy would have proceeded this way. If that were his strategy, this was the way to do it. If that were his strategy, he wouldn't have done this. But at no point does he say, my trial strategy to introduce the same tape is to do this. It simply comes in, the trial judge says, are you doing this for trial strategy? And he says yes. So he never proposes one. So on an objective basis, without trying to come up with a trial strategy, there isn't one. Counsel, what do you do with the post-conviction expert, defense expert's testimony that that could be considered a trial strategy? She didn't say that. Again, I invite you to read her testimony. It may have helped the defendant's case in showing inconsistencies in the victim's testimony. That's her quote. That is not her quote, Judge. I know it's a quote from the MAC, but what she says is that in general, a person could use a SANE interview to impeach somebody. In general, someone could use statements that are made in the SANE to impeach them at trial. When asked about this case, she unequivocally says he never did that. He never uses the SANE to impeach her. He doesn't use the SANE at closing. He doesn't use the SANE at all. So the MAC sort of lifts one language of what she says about a possible strategy for using a SANE and attributes it to this case. But that is not accurate. Counsel, I think we're going to have to leave it there. We will hear from Ms. Reardon. Thank you, Your Honor. Good afternoon, Your Honor. Suzanne Reardon for the respondent in this case. I would first start out by saying that what's important here is the fact that this is being considered under the habeas standard, which looks at, as Judge Barron mentioned, whether any reasonable counsel could have considered this a reasonable strategy, layered on top of whether that was a reasonable application of Strickland. So in this case, as the trial judge did a very extensive and careful evidentiary hearing of four days listening to all these, in terms of the witnesses that weren't called by defense counsel, she let them all testify as to what they would have said at trial. All of these witnesses were somehow linked or, you know, either the petitioner's family or friends had some sort of allegiance to the defendant or the petitioner. And a lot of what they said was, as has been stated, similar to what the victim had already said. She was allowed to leave the house. She could go out to the park and do errands. The remaining testimony, which was really just impeachment, was sort of a subjective opinion on their part, that they were, you know, a normal, happy couple. None of them could really talk about what happened behind closed doors, whether she really was raped or beaten. They really just talked about how, you know, she was part of the family and they were a couple, but really didn't go to the heart of the crimes charged here, which were rape and statutory rape and assault and battery. What about the age issue? You know, my memory of, I went back and read the testimony of the witnesses at the evidentiary hearing. My memory is that they did not testify as to her age at the time. And again, that would be just a subjective opinion on their part that she was above the age of consent. My memory is that they didn't talk about that. I mean, it may be a waste to talk about it if they didn't talk about it. But if they did talk about it, I don't really understand why it's just a subjective opinion. I mean, she gave a testimony about her own age. There's no documentary evidence regarding her age. How could that not potentially affect the trial? If you're supposed to do you believe what she said about her age? If there's 10 people testifying, she was over age. We all thought she was over age. But how can the jury not reasonably say, well, I don't, I mean, if you don't have any documentary evidence of her age, all these people say she's over the age of consent just because she says it. We wouldn't have, that seems like it creates a reasonable probability of a different outcome. And that it seems unreasonable to say otherwise to me. Again, my memory of the testimony of these witnesses, they didn't talk about her age. I invite the court to look at that to confirm that. But my memory is that they did not talk about the fact that she was over the age of consent or over 16 in their testimony. In terms of the other irrelevant and prejudicial evidence which Petitioner claims came in, again, it was a reasonable decision that the MAC made that these did not prejudice the defendant. Again, you know, for example, Sgt. Mulcahy's testimony that Petitioner was a gang member, even in his own testimony he agreed that he didn't confirm that. So there wasn't really no evidence of that. The uncharged conduct about the gang rape and the witchcraft, this was all, again, Petitioner says it wasn't really clearly, counsel never clearly stated that this was his strategy. But if you look at his closing argument, that's all that it's about. The victim was lying. There was no physical evidence of what she said occurred. There was no info about her age. No witnesses backed her testimony except these two women who she complained to, said the police investigation was inadequate because all they did was take her at her word. Was there any corroborative testimony put forward on behalf of the defendant? I'm sorry, Your Honor. Corroborative as to what? His story that she was lying. Corroborative in terms of witnesses? No. Right, so I guess, and on the other hand, we have a case in which the record depends entirely on people believing she's telling the truth. It just seems a little odd to say there's no prejudice from not having anybody support your account that she's lying. And to just say all of that is cumulative, or all of it is just impeachment, just doesn't seem to grasp the reality of what the trial would be. You have a person who says he did all these things to me, and then you have this trial strategy of she's lying, she's lying, she's lying, and not a single person who was present for any of it gets up to say, I agree, I don't believe any of this, I didn't see any of it, and then just say, well, that's just cumulative or impeachment, that doesn't seem to really grasp how it would work in front of a jury to me, but maybe I'm missing something. Again, I would emphasize that we're under the habeas standard, which really looks at whether this was a reasonable application of Strickland and not whether this court disagrees. I mean, there's a difference of opinion. It's reasonable about not putting forward any witnesses on behalf of the defendant to suggest that the account that's being told is false. If they're inherently incredible or they weren't there, they have nothing to say, I understand why that wouldn't create prejudice, those witnesses wouldn't add anything. But if the witnesses were around them a lot and have this to say, how could it not affect the jury positively? How would it be reasonable to conclude it just wouldn't have any effect on the jury? I just don't see that. Well, as I stated earlier, none of them could really attest to whether these acts, which arguably happened behind closed doors in their bedroom, whether they really happened. They just talked about what they observed about the petitioner and the victim and whether they were a couple or not. They really didn't talk about, you know, they weren't there. That's often the case with rape cases. There are no eyewitnesses to what actually happened in terms of the sexual assault allegations. And in terms of the assault and battery, we have physical evidence that she came to the courthouse with physical bruises and marks on her as well as pictures of the bruises and marks on her. So in terms of that, I mean, reasonably, when you look at the fact that all of these people were aligned with petitioner and all they had to say that was different from what the victim said is, oh, they were a happy couple. They were fine. Under the habeas standard, I believe that was a reasonable conclusion by the state, not only the motion judge or the trial judge, but also the appeals court. Okay. Then in terms of the pharmacy record, I think it really does turn on whether the fact that the trial court believed what the petitioner's counsel said at trial. And really what he said is the only evidence I have are these medical records. I don't know that we can say that, you know, that's the only discovery he received. What he said is the only evidence I have is this handwritten or medical records with this handwritten date of birth. And if he didn't have these pharmacy records, he couldn't have been ineffective for not using them. So I think that kind of resolves that issue. Unless the court has any other questions, I will rely on my brief and asking the court to affirm the denial of habeas relief. Just hold on a minute, counsel. No. Okay. Mr. Misfarer, you have one minute. Thank you so much, Your Honor. So the issue here is that this characterization of the other people in the house as being cumulative, again, is not accurate. It's not a reasonable look at it. First of all, the trial lawyer didn't investigate anyone. So when you don't investigate, then you have a problem about trial strategy because you don't know if these people could or could not be helpful. On the prejudice portion of it, he is prejudicial. As Justice Barron has pointed out, the feel of this trial is a lot more than whether or not somebody can specifically view a sexual assault when it occurs. In most sexual assault cases, we often have it. It's not a public view. Before you conclude, your opponent says there was no reference to age by any of these witnesses. You told us there was reference to her age by these witnesses. Is there parts of the record you could point us to where the age was discussed? I'm happy to file a letter to that. I apologize, Judge, that I can't. I can tell the court from my memory, as the person who did it, I don't believe anyone testified to a specific age. I believe they all testified that they thought she was over the age of 16 or over the age of consent. So that goes to that point. But it does go to the general feel. She is testifying about being trapped as a prisoner in this tower and being repeatedly assaulted. No one would have seen it inside a closed-door bedroom. And so, therefore, all we have to rely upon her truthfulness as to these sexual assaults is her testimony. So impeachment of her in any way, shape, or form goes to the heart of that. So it's hard for the government to say, well, it's just or mere impeachment testimony when the entire case relies upon her credibility. But to the court's bigger fact, for the jury to see or hear one person saying, I live in this house. This is what is happening to me repeatedly. And hear no one else to discredit that. And then, in contrast, having not just people who are associated with Mr. Quintanilla. There are his family members. There are women who are married to his family members. There was a landlord who came to the house from occasion. And then there were her sisters, the complaining witness and sisters who did not live in the house. For all of them to paint a very stark picture of what's occurring in this household would give the jury pause. And I would submit would give them reasonable doubt as to whether or not the defendant was really guilty of the crimes that he's accused of. And to say that it doesn't dramatically paint a very different picture, it does. It is almost expected by the jury that if he lives in this household with lots of people, then clearly he'd have lots of support to come and say, this didn't happen. But that didn't occur. And the Commonwealth takes advantage of that in their closing by saying she was not contradicted. That everything she said was never contradicted. And it doesn't burden shift, but it certainly raises the specter that if he had witnesses that could testify to something differently, he would have. Thank you. Additional questions from the court? No. Thank you, counsel. Thank you, your honors. That concludes the argument in this case. And attorney Reardon, you should disconnect from the hearing at this time.